**IN THE UNITED STATES DISTRICT COURT**

**FOR THE** <u>NORTHERN</u> **DISTRICT OF TEXAS**

<u>AMARILLO</u> **DIVISION**

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2012 MAY 17 PM 1:03

DEPUTY CLERK _____

Form To Be Used By A Prisoner in Filing a Complaint
Under the Civil Rights Act, 42 U.S.C. § 1983

<u>STEVEN MICHAEL BACKSTROM #:1657938</u>

Plaintiff's name and ID Number

<u>W.P. Clements unit(TDCJ-ID)</u>

Place of Confinement

# 2-12 CV-116-J

CASE NO: _____

(Clerk will assign the number)

v.

<u>RICK THAYLER, P.O. Box 99, Huntsville, Tx.77432-0099</u>

Defendant's name and address   **(Director, TDCJ-ID)**

<u>JOHN ADAMS, 9601 spur 591, Amarillo, Tx. 79107-9606</u>

Defendant's name and address   **(Sr. Warden, W.P. Clements unit(TDCJ-ID))**

<u>STUART WILLIAMS, 9601 spur 591, Amarillo, Tx. 79107-9606</u>

Defendant's name and address   **(Manager/Head Supervisor, W.P. Clements unit**
(DO NOT USE "ET AL.")          **Shoe Factory)**

---

## INSTRUCTIONS - READ CAREFULLY

**NOTICE:**

**Your complaint is subject to dismissal unless it conforms to these instructions and this form.**

1. To start an action you must file an original and one copy of your complaint with the court. You should keep a copy of the complaint for your own records.

2. Your complaint must be legibly handwritten in ink, or typewritten. You, the plaintiff, must sign and declare under penalty of perjury that the facts are correct. If you need additional space, **DO NOT USE THE REVERSE SIDE OR BACK SIDE OF ANY PAGE**. ATTACH AN ADDITIONAL BLANK PAGE AND WRITE ON IT.

3. You must file a separate complaint for each claim you have unless the various claims are all related to the same incident or issue or are all against the same defendant, Rule 18, Federal Rules of Civil Procedure. Make a short and plain statement of your claim, Rule 8, Federal Rules of Civil Procedure.

4. When these forms are completed, mail the original and one copy to the Clerk of the United States Court for the appropriate District of Texas in the Division where one or more named defendants are located, or where the incident giving rise to your claim for relief occurred. The list labeled as "VENUE LIST" is posted in your unit law library. It is a list of Texas prison units indicating the appropriate District Court, the Division and an address of the Divisional Clerks.

ATC 1983 (Rev. 04/06)          Page 1 of 5

CONTINUED FROM PAGE...1;

Defendant(S);


Elizabeth Boerlin, P.O. Box 99, Huntsville, Tx. 77342-0099
(TDCJ Risk Management Supervisor)

C.A. Harrell, W.P. Clements unit, 9601 spur 591, Amarillo,Tx. 79107
(W.P. Clements unit Program Supervisor-III)

Nikelle Grant, W.P. Clements unit, 9601 spur 591, Amarillo, Tx. 79107
(W.P. Clements unit Safety Officer-I)

C.F. Hazelwood, T.C.I. , P.O. Box 99, Huntsville, Tx. 77342-0099
(Executive Director, Texas Correctional Industries)

John Doe, Executive Director of the American Correctional Association
(or) its highest ranking individual(S) assigned to audit and/or assess
the safety issues of the W.P. Clements unit (TDCJ-ID) Shoe Factory
"DESMA" soling Machines.;

John Doe, Executive Director of the Texas Dept. of State Health Services
(TDSHS) (or) its highest ranking individual(S) responsible for investi-
-gation(S) of accident(S) reported by the TDCJ-ID Officials  and/or
certify the W.P. Clements Shoe Factory "DESMA" soling Machine(S)(x4)
as being SAFE....

## FILING FEE AND IN FORMA PAUPERIS

1. In order for your complaint to be filed, it must be accompanied by the filing fee of **$350.00**.

2. If you do not have the necessary funds to pay the filing fee in full at this time, you may request permission to proceed *in forma pauperis*. In this event you must complete the application to proceed *in forma pauperis* (IFP), setting forth the information to establish your inability to prepay the fees and costs or give security therefore. You must also include a six (6) month history of your Inmate Trust Account. You can acquire the application to proceed IFP and appropriate Inmate Account Certificate from the law library at your prison unit.

3. 28 U.S.C. 1915, as amended by the Prison Litigation Reform Act of 1995 (PLRA), provides, "…if a prisoner brings a civil action or files and appeal *in forma pauperis*, the prisoner shall be required to pay the full amount of a filing fee." Thus, the Court is required to assess and, when funds exist, collect, the entire filing fee or an initial partial filing fee and monthly installments until the entire amount of the filing fee has been paid by the prisoner. If you submit the application to proceed *in forma pauperis*, the Court will apply 28 U.S.C. 1915 and, if appropriate, assess and collect the entire filing fee or an initial partial filing fee, then monthly installments from your Inmate Account, until the entire **$350** filing fee has been paid.

4. If you intend to seek *in forma pauperis* status, then do not send your complaint without an Application to Proceed IFP, and the Certificate of Inmate Trust Account. Complete all the essential paperwork before submitting it to the Court.

## CHANGE OF ADDRESS

It is your responsibility to inform the Court of any change of address and its effective date. Such notice should be marked **"NOTICE TO THE COURT OF CHANGE OF ADDRESS"** and shall not include any motions(s) for any other relief. Failure to file a NOTICE TO THE COURT OF CHANGE OF ADDRESS may result in the dismissal of your complaint pursuant to Rule 41(b), Federal Rules of Civil Procedures.

## I. PREVIOUS LAWSUITS:

A. Have you filed any other lawsuits in the state or federal court relating to imprisonment?              YES    _xxx_   NO

B. If your answer to "A" is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, giving the same information.)

1. Approximate date of filing lawsuit: _____ N/A _____

2. Parties to previous lawsuit:
   Plaintiff(s): _____ N/A _____

   Defendant(s): _____ N/A _____

3. Court (If federal, name the district; if state, name the county) _____ N/A _____

4. Docket Number: _____ N/A _____

5. Name of judge to whom case was assigned: _____ N/A _____

6. Disposition: (Was the case dismissed, appealed, still pending?)
   _____ N/A _____

7. Approximate date of disposition: _____ N/A _____

**II. PLACE OF PRESENT CONFINEMENT:** W.P. CLEMENTS UNIT,9601 spur 591
Amarillo, Tx. 79107-9606

**III. EXHAUSTION OF GRIEVANCE PROCEDURES:**

Have you exhausted both steps of the grievance procedure in this institution? ___xxx___ YES ___ NO

Attach a copy of the Step 2 grievance with the response supplied by the prison system.

**IV. PARTIES TO THE SUIT:**

A. Name of address of plaintiff: ___STEVEN MICHAEL BACKSTROM, Clements unit,___
9601 spur 591, Amarillo, Tx. 79107-9606

B. Full name of each defendant, his official position, his place of employment, and his full <u>mailing</u> address.

Defendant #1: RICK THAYLER, Executive Director, TDCJ-ID, P.O. BOXX
99, Huntsville, Tx. 77342-0099

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.
Dictates sleep deprivation policy and allows unsafe equipment usage.

Defendant #2: JOHN H. ADAMS, Sr. Warden, Clements unit, 9601 spur 591,
Amarillo, Tx. 79107-9606

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.
Continuosly implements sleep deprivation & runs Shoe Fact.W/unsafe
equip.

Defendant #3: STEWART WILLIAMS, Clements unit Shoe Factory Manager,
9601 spur 591, Amarillo, Tx. 79107-9606;

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.
Continues to operate Shoe Factory w/unsafe equip....knowingly.

Defendant #4: ELIZABETH BOERLIN, Risk Managment Sup....xxxxxxxx

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.
meaningful
Failed to order^safety meetings, Failed to order up-grades for
safe work environment concerning "DESMA" shoe machines.
Defendant #5:
C.A. HARRELL, Clements unit Program Sup.-III.....

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.
Failed to notify all parties concerned about the need of up-grade

for safety on "DESMA" shoe machines.

Defendant#6; NIKELLE GRANT, Clements unit Safety Officer-I
(SAME)
Defendant#7; C.F. HAZELWOOD, T.C.I. Manufacturing Exec. Dir.
Knowingly allows unsafe work environment by failing to up-grade
"DESMA" shoe machines for safe-proof operation(see MAINgroup mach.)
Defendant#8;  JOHN DOE, American Correctional Association Exec.Dir.
and its [designee,Regional Dir.];.....
Knowingly allowing such unsafe equipment to operate without up-grade.

**. V.  STATEMENT OF CLAIM:**

State here in a short and plain statement the facts of your case, that is, what happened, where did it happen, when did it happen, and who was involved.  Describe how <u>each</u> defendant is involved.  <u>You need not give any legal argument or cite any cases of statutes.</u>  If you intent to allege a number of related claims, number and set forth each claim in a separate paragraph.  Attach extra pages if necessary, but remember that the complaint must be stated briefly and concisely.  IF YOU VIOLATE THIS RULE, THE COURT MAY STRIKE YOUR COMPLAINT. ...;   On 3/1/2011 at aprox. 0800 hrs. while being trained by another inmate as a'machine operator' at the W.P. Clements unit(TDCJ-ID) Shoe Factory "DESMA" soling Machine, Plaintiffs Right hand was pressed into a shoe-mold, breaking two-2 fingers, requiring surgery and causing permanent disfigurement and imparement and serious trama and disability.

*This harm occurred because of "SLEEP DEPRIVATION",, IMPROPER SAFETY TRAINING,,IMPROPER OPERATOR TRAINING,BY INMATES UNCERTIFIED TO DO SO,, AND IN GENERAL, "BEING FORCED TO WORK IN AN UNSAFE WORK ENVIRONMENT".......
i.e. during those hrs designated for sleep (2230 hrs-0330 hrs) inmates including myself, are only allowed to sleep in one,two or three hr. periods without being awakened by cellblock officers due to W.P. Clements unit policies and practices of waking inmates up through the night for such things as  mail call, layins, meal cards issued, roster counts etc... along with a 0300 hr wake-up for insulin and immediately followed by chow and work calls.

**This only allows an inmate(including myself) a maximum of 3-1/2 hrs.

of UNinterupted sleep.      See further definition/explanation in attached
                            Statement of Facts and Memorandum of Law...;

**VI.  RELIEF:** State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite not cases or statutes.
'AS PER ATTACHED COMPLAINT; -- A DECLARATION, PERMANENT INJUNCTION, FUTURE ADEQUATE TRAINING BY CERTIFIED INSTRUCTOR(S), COMPENSATORY DAMAGES OF $10,000.oo per defendant, PUNITIVE DAMAGES OF $100,000.oo per defendant...and a jury trial.
(TO INCLUDE A "TEMPORARY" INJUNCTION UNTIL THESE CLAIMS ARE ADDRESSED ON THE MERITS)
(AND UNTIL AN ADEQUTE INVESTIGATION IS CONDUCTED BY AN OUTSIDE AGENCY FOR SAFETY).

**VII.  GENERAL BACKGROUND INFORMATION:**

A.  State, in complete form, all names you have ever used or been known by including any and all aliases:

STEVEN MICHAEL "MIKE" BACKSTROM

B.  List all TDCJ-ID identification numbers you have ever been assigned and all other state or federal prison or FBI numbers ever assigned to you, if know to you.

TDCJ-ID#  1657938

**VIII.  SANCTIONS:**

A.  Have you been sanctioned by any court as a result of any lawsuit you have filed? ____ YES  x x x NO

B.  If your answer is "yes", give the following information for every lawsuit in which sanctions were imposed.  (If more than one, use another piece of paper and answer the same questions.)

1.  Court that imposed sanctions (If federal, give district and division): _____ N/A _____

2.  Case Number: _____ N/A _____

3.  Approximate date sanctions were imposed: _____ N/A _____

4.  Have the sanctions been lifted or otherwise satisfied? __N/A__ YES  __N/A__ NO

Has any court ever warned or notified you that sanctions could be imposed? ____ YES _xxx_ NO

D. If your answer is "yes", give the following information for every lawsuit in which warning was imposed. (If more than one, use another piece of paper and answer the same questions.)

1. Court that imposed warning (if federal, give the district and division): _____ N/A

2. Case number: _____ N/A

3. Approximate date warning were imposed: _____ N/A

Executed on: __May 15, 2012__          __STEVEN MICHAEL BACKSTROM__
          (Date)                              (Printed Name)

                                             (Signature of Plaintiff)

## PLAINTIFF'S DECLARATIONS

1. I declare under penalty of perjury all facts presented in this complaint and attachment thereto are true and correct.

2. I understand if I am released or transferred, it is my responsibility to keep the Court informed of my current mailing address and failure to do so may result in the dismissal of this lawsuit.

3. I understand that I must exhaust all available administrative remedies prior to filing this lawsuit.

4. I understand I am prohibited from bringing an *in forma pauperis* lawsuit if I have brought three or more civil actions in a Court of the United States while incarcerated or detained in any facility, which lawsuits are dismissed on the ground they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am under imminent danger or serious physical injury.

5. I understand even if I am allowed to proceed without prepayment of costs, I am responsible for the entire **$350** filing fee and costs assessed by the Court, which shall be deducted in accordance with the law from the inmate account by my custodian until the filing fee is paid.

Signed this ____15th____ day of __MAY_____, 20 _12___.
           (Day)                    (Month)                          (Year)

                                 __STEVEN MICHAEL BACKSTROM__
                                     (Printed Name)

                                        (Signature of Plaintiff)

**WARNING: The Plaintiff is hereby advised any false or deliberately misleading information provided in response to the following questions will result in the imposition of sanctions. The sanctions the Court may impose include, but are not limbed to monetary sanctions and/or the dismissal of this action with prejudice.**

IN THE UNITED STATES
DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

—————————————————————— §
                                        §
STEVEN MICHAEL BACKSTROM                 §
            Plaintiff pro-se             §
V.                                       §
RICK THAYLER, JOHN ADAMS, STEWART WILLIAMS, §
C.F. HAZELLWOOD, ELIZABETH BOERLIN, CYNTHIA §       COMPLAINT
HARRELL, NIKELLE GRANT, JOHN DOE-(Exec.Dir. §
A.C.A. or Highest ranking officer assigned §   CIVIL ACTION#:_____
to audit and/or assess the actual safety of §
TDCJ-ID/T.C.I. equipment & training procedures) §
JOHN DOE-(Exec.Dir. for the Dept. of Health Ser- §
-vices)                                  §
            Defendant(S)                 §
—————————————————————— §

## I.   JURISDICTION & VENUE

1.  This is a civil action authorized by 42 U.S.C. §1983 to redress
    the deprivation, under the color of state law, of rights secured
by the constitution of the United States.   This Hon. Court has Jur-
-isdiction under 28 U.S.C. §1331 and 1343(A)(3).   Plaintiff seeks
declaratory relief pursuant to 28 U.S.C. §2201 and 2202.
    Plaintiffs claims for Injunctive relief are authorized by 28 U.S.C.
§2283 and 2284  and Rule 65 of the Fed. Rules of Civ. Proc....;

2.  The Northern Dist. Court is an appropriate VENUE under 28 U.S.C.
    §1391(b)(2)  due to the location where the events giving rise to
these claims occurred.

## II.  PLAINTIFF (Pro-se)

3.  Plaintiff Pro-se, Steven Michael Backstrom, is and was at all times
    mentioned herein, a prisoner of the State of Texas, in the custody

1.

of the Texas Dept. of Crim. Justice-Institutional Division (TDCJ-ID), and is currently confined at the W.P. Clements unit in Amarillo,Tx..

### III.   DEFENDANT(S)

4.   Defendant, Rick Thayler, is the Exec. Director of TDCJ-ID. He is legally responsible for the over-all operations of the Dept. and each institution under its jurisdiction....including the W.P. Clements unit.

5.   Defendant, John Adams, is the Sr. Warden of the W.P. Clements unit.  He is legally responsible for the operations of the W.P. Clements unit  and for  the welfare of  the inmates in that prison.

6.   Defendant, C.F. Hazellwood, is the Exec. Director of the Texas Correctional Industries (T.C.I.) .   He is legally responsible for the totaloperations of TDCJ-ID manufacturing operations, to in--clude its facilities and contents therein.

7.   Defendant, Stewart Williams, is the W.P. Clements unit Shoe Factory superintendant/Supervisor.   He is legally responsible for the day-to-day operations of the aforementioned Shoe Factory, which includes the day-to-day welfare of all inmates under his employ during operation hours.  (0445 - 1145)hrs, AND (1145 - 1500) hrs.

8.   Defendant, Elizabeth Boerline, is the TDCJ-ID Risk Manager-V. She is legally responsible for assessing, reporting and rectifying any and all RISKS throughout the W.P. Clements unit....including the Shoe Factory....and TDCJ-ID in general.

9.   Defendant, Cythia A. Harrell, is the W.P. Clements Program Sup. -III.   She is legally responsible for assessing, reporting and rectifying any and all RISKS throughout the W.P. Clements unit.... including the Shoe Factory.

10.   Defendant,Nikelle Grant, is the W.P. Clements unit Safety Off--icer-I.   She is legally responsible for assessing, investigating,

and reporting any and all risks within the W.P. Clements unit;

11.    Defendant, JOHN/JANE DOE, is the highest ranking individual
   (Exec.Dir.) for the American Correctional Association (A.C.A.)
that is legally responsible for the certification of TDCJ-ID equip-
-ment as being 'safe'.   This individual will also be responsible
for investigating accidents and/or claims involving injuries while
prisoners are operating TDCJ-ID owned equipment and/or machinery in
association with any insurance and/or bonding agency/agent.

12.    Defendant, JOHN/JANE DOE, is the Executive director and/or the
   highest ranking individual within the Texas Dept. of State Health
Services (TDSHS) that is legally responsible for investigating claims
involving injuries to prisoners due to the unsafe operations of TDCJ-
-ID equipment and/or T.C.I. unsafe equipment and/or machinery and whom
has deemed the "DESMA" shoe machine(S)(  x4) "SAFE" for operation,
knowing there is another newer machine (THE MAINgroup machine)which
is exemplary of what "A SAFE MACHINE" should consist of, and knowing,
the 4x "DESMA" machines do NOT meet those standards.


                        IV.   FACTS
13.    On March 1, 2011, after aprox. 2½ hrs of 'final' training by
   another prisoner for the position of "Machine Operator" on a "DESMA"
soling machine, plaintiff got his right hand caught between the shoe
mold and molding ring, breaking the 4th and 5th  digits resulting
in surgery, pain and suffering, and permanent limited use of those
fingers.

14.    Plaintiff claims that this accident was due to the accumulation
   of several issues which plaintiff believe's are Constitutional Vio-
-lations;  1).  Sleep deprivation  2).  Unsafe work environment (incluse
are operation and safety training which are non-existent)  and 3).
deliberate indifference to all the above.


                   IV.-A.   SLEEP DEPRIVATION
           (Cruel and unusual punishment) (8th Amend. Violation)
15.    J.M. 287 S.W. 3d 481,  "those conditions which may lend them-
   -selves to an 8th Amend. Violation claim; food,warmth or exercise...

                            3.

.....and Plaintiff believes that "SLEEP" is inclusive.

16.   In order to prove an 8th amend. claim, Plaintiff must show;
    1). that deprivation alleged was sufficiently serious  and;
    2). unnecessary infliction of pain.

*Plaintiff claims that the practices and policies of the TDCJ, specif-
-ically the W.P. Clements unit, during the months leading up to his
accident, and up to the time this complaint was filed, specifically
related to Slepp Deprivation, was/were a contributing factor of sig-
-nificance.   see Exhibit #1 (spread sheet of sleep deprivation sched-
-ules).

17.   Plaintiff is a 1st floor resident.   The Dayrooms are right
    outside his door.   Due to excessive noise in the section dayroom
which includes the reverberation of two T.V.'s at high levels of volume
and obstreperous inmates slamming domino's, yelling at the top of their
voice, slamming of doors every hour for ingress/egress , even ear plugs
are useless and it is practically impossible to get any sleep prior to
2230 hrs.(rack-time).   However, as exhibit #1. demonstrates , inmates
are subject to further unnecessary wake-up issues past 2230 hrs...


18.   Plaintiff went to bed the evening prior to his accident at aprox.
    2100 hrs..   After eventually falling asleep (in a state of semi-
-consciousness) he was awakened a minimum of 5-five times by slamming
doors, slamming domino's, mail call, layin's passed out, meal card
delivery and roster count (bed-book) with the later two-2 requiring
plaintiff to exit his bunk to either show his I.D. Card or/and sign
for said meal card, with the exception of the roster count, which could
and can be conducted during rack-up as oposed to the normal time of
2240 hrs. .   This roster count could be accomplished prior to 2130 hrs..
Then, at aprox. 0300 hrs. plaintiff was again awakened for an insulin
call which is conducted by the pod-officer screaming out for offenders
to call out their cells so-as to let out for insulin shots.   There
is never more than  a few who need the shots, but all of us are awakened.


19.   Further issues include all offenders being awakened to 'get
ready' to drop for breakfast 1½ hrs. before it is time to eat (see
prep. Exhibit #1) NOTE: if shoe factory workers are going to chow, this
is fine, but if they are not, they should be allowed to sleep for

4.

another 1½ hrs rather than being forced to choose if one wants to eat or get another 1½ hrs sleep.   Plaintiff ultimately received aprox. 3½ hrs. of 'uninerupted' sleep and no more thean 4½ hrs. of'total' sleep leading up his accident.   These actions by TDCJ (W.P. Clements unit) officials , without question, demonstrates 'a pattern'.....

20.   This brings to light a couple of important questions;
    1)  is sleep deprivation cruel and unusual punishment, ?  Especia-
        lly given that it is 'a pattern' , and that it is a contributing
        factor to plaintiffs accident, and probably in all prior and fut-
        -ure accidents...   and  2
    2)  how many hours of 'uninterupted'sleep  would deflect a future
        8th amend. claim

21.   Provided Exhibit #1. clearly demonstrates that it is unnecessary
      to conduct all of the noted deliveries and counts 'after' everyone
      has retired for the evening.

          IV. (B)(1)...FORCED TO WORK IN AN UNSAFE ENVIRONMENT
                    (8th  Amend. Viol.)

22.   Hoptowit v. Spellman, 735 F.2d 779, 784 (9th cir. 1985);
      "Person's involuntarily confined by the State , have a Constitu-
      -tional right to safe conditions of confinement.   The 8th Amend.
      entitles inmates ina penal institution to an adequate level of
      personal safety."

23.   The W.P. Clements unit Shoe factory emplyee's(4)-four "DESMA"
      soling machines  and  (1)-one MAINgroup soling machine to finalize
      the manufacturing process for the Canvas deck-shoes.   Upon information
      and belief , the (4)-four "DESMA" machines were manufactured in Germany
      in the early 1950's.  see  RUIZ v. ESTELLE, 503 F.Supp. 1265 [HN 19]
      "To establish a constitutional violation requires proof that the fact-
      -ory is so plagued by inadequate machinery as [predictably] to cause
      needless harm and suffering."

24.   The sheer volume of injurious accidents due to unsafe machinery
      ("DESMA" macbines specifically), in the W.P. Clements unit shoe
      factory  is  proof  beyond  any  doubt that the work conditions do
      warrant this courts intervention..e.g. between Nov. 2010 and May 2011,
      plaintiff is aware of 4-four injurous accidents requiring extensive
      medical attention.

25.   The "DESMA" machines have no fail-safe mechanisms of any adeq-
      -uacy.   In fact, the 'panic'-buttons designed to stop the machines
      in an emergency situation are   installed on a seperate component

                                5.

which places itself 7'2" away from the closest possible pinch-point (one-1 of 37 total pinch-points on the "DESMA" machine).  The two-2 slide-valve switches are 14" away from the mold and recessed <u>under</u> the machine 2" which place them out-of-sight if one's hand is in peril.

The average distance between the shoe-mold and the ring (sole-mold) is 1-7/8's " (minus the thickness of a victims hand) and the average "DROP" time for the shoe-mold is 2.2 seconds (this test consisted of three different molds)(with their 3-test-runs using a wrist stop-watch).

26.    These measurements and the volume of injurous accidents is clear proof that the "DESMA" machines are 'unsafe'; however, as further proof in support of plaintiffs claims, the TDCJ/TCI W.P. Clements unit shoe factory purchased a 'MAINgroup'soling machine aprox. 3 ½ yrs ago and based on information and belief, this new machine has logged 'zero' (Ø) accidents to date.  In fact, outside of malicious acts, or an operator falling from his work-perch, it is vertually 'impossible' for anyone to be seriously injured on this new machine. This MAINgroup machine is satiated with safe-(fail-safe) mechanisms.

27.    Plaintiff refers the court to Exhibit #2. (Inter-office comm- -unications to all staff and offenders) dated Oct. 7th, 2010, Subject; "Unit Safety Policy" Statement, para.-1,  sentence-3, is not a true statement in regards to the "DESMA" machines, as there are NO GUARDS (SAFETY-GUARDS) in place on these machines.

28.    See Exhibit #2, para.-4, item-1, sentence-2.
Plant Superintendent Williams, as well as various shift supervis- -ors, have been told that the "DESMA" machines are 'unsafe' and argued that because the machines had slide-valve switches they were safe, where, as it is, those switches are the very cause of accidents.

29.    Item-6 of Exhibit #3 in an incorrect statement,  if an inmate refuses to work on any "DESMA" machine under the flag claiming it to be unsafe, he will be arrested and cited for 'failing to obey an order'.  See; Morgan v. Morgensen, 465 F.3d 1041 (9th cir. 2006); The ninth Circuit Court of Appeals held that 'known dangerous prison working conditions can give rise to an 8th amend. cruel and unusual

6.

punishment claim, even where the prisoner 'volunteered' for the job."
The court also held that "the supervising prison official was not
entitled to qualified immunity after he ordered the prisoner to con-
-tinue working on the known dangerously defective prison equipment".

Steven Morgan was incarcerated at the Monroe Correctional Complex
in Washington, where every prisoner is required to work.  However,
one can volunteer for 'choice' higher-paying jobs, and Morgan had
thus obtained a job in the prison print shop.   In 2003, Morgan told
his supervisor, Tom Canady, that his printing-press was seriously
malfunctioning, having bucked and nearly torn off two of his fingers.
Canady, anxious to complete a print job, nonetheless ordered Morgan
to continue the press run but to 'be very careful'.   Shortly there-
-after the press caught Morgans hand and tore off his right thumb.
He sued Canady and other prison officials under 42 U.S.C.§1883 claim-
-ing 8th amend. violations of cruel and unusual punishment and 14th
amend. violations for compelling him to work under dangerous cond-
-itions.

Defendants moved for summary judgement, claiming qualified immun-
-ity.   The dist. ct. (U.S.D.C.-W.D. Wash.) granted summary judgement
for all defendants except Canady.   Canady took an interlocutory appeal
to the Ninth circuit, soley on the qualified immunity ruling.   The
Court reviewed the ruling de novo,using the 2-prong test from "Saucier"
v. Katz, 533 U.S. 194, 201(2001) to determine if the alleged conduct
violated Morgan's const. rights, and if so, if Canady was on notice
that his conduct was thus unconstitutional.

 * As to the first prong, the court found the working conditions
'objectively, sufficiently serious'  and that Canady's orders were
deliberately indifferent to Morgan's safety.

 *Canady defended by claiming that because Morgan worked in the print
shop 'at his own choice' it was impossible to conclude that he had
been'compelled' to perform labor that endangered him.

 *Morgan successfully rebutted that [b]ecause he was lawfully required
to work, his choice of job did not turn that employment into a voluntary
act.   Thus, Morgan did not waive his 8th amend. or 14th amend rights
by taking the job.

 *Canady continued to argue that Morgan could have simply refused
to work, resigned his job, or filed a grievance.

\* The Court Ruled and recognized that Refusal of a direct order
IS PUNISHABLE, and that the question of whether Morgan had any viable
options was a[disputed material fact issue] not reviewable in a sum-
-mary judgement motion".

\*\* As to the second prong,[whether the asserted right was clearly
established] at the time, Canady posited that the question had been
addressed with mixed results in several circuits.   But the Court
found in-circuit support in  Osolinski v. Kane, 92 F.3d 934 (9th cir.
1996).   Like the current case,  Osolinski  involved a prisoners work
supervisor ordering a prisoner to continue working with known defective
equipent.   Therefore, there was sufficient presedent puting Canady
ON NOTICE that his actions would violate the 8th amendment.

 \*Accordingly, the 9th cir. affirmed the dist. cts. denial of Canady's
qualified immunity-based summary judgement motion and remanded for
further proceedings.

 \* Likewise, not only plaintiff, but many prisoners who work at the
W.P. Clements unit shoe factory, (Emphisis added for those whom have
been injured on the "DESMA" soling machines), have complained and
questioned the constitutionality of being forced to work on these
unsafe "DESMA" soling machines.....and continuously noted the clear
example of just [how] 'unsafe' those machines are...in comparison to the
MAINgroup (new machine) with all of its fail-safe mechanisms which
demonstrate the clearly needed 'up-grading' of such safety mechanisms
on the OLD "DESMA" machines.   NOTE;  upon order of the court such
testimony may be given by any named witnesses herein......

30.    Item-8 of Exhibit #3 is also incorrect [b]ecause, by reason
   of hazard, no protection mechanisms have been installed to prevent
any further or future injuries to prisoners working on the "DESMA"
soling machines.

     IV. (B)(2)  INADEQUATE SAFETY AND OPERATIONS TRAINING;

31.    On the W.P. Clements unit Shoe factory bulliten board is a
   copy of an Inter-Office Communications, dated Sept., 1, 2004,
titled; "Establishing a Uniform Code of Conduct",  signed by Super-
-intendent Williams on August 31st, 2005.

\*\*Plaintiff refers the court to item 10, quote  "Supervisors will

8.

only operate machinery to familiarize themselves or to show an inmate
how to operate a machine...."   This is untrue....only inmates train
inmates how to operate the "DESMA" soling machines, and they will cont-
-inue to do so...(even uncertified inmates train other inmates) incorr-
-ectly, of course.

   Because shoes are being produced 'for sales purposes' in some cases,
it is the mantra that 'obviously the shoes are being made properly' and
'obviously the operator(S) are adequate (whether certified or not)..?

   However....again, plaintiff refers the court to observe the volume
of accidents on the "DESMA" soling machine in comparison to the MAIN-
-group soling machine's history of accidents, and observe that it has
been the same prisoners who operate the MAINgroup machine for the ent-
-ire time it has been at W.P. Clements unit shoe factory  (all of them
are certified and very few new-comers are trained on this machine).


32.   See; RUIZ v. ESTELLE, @ [HN 34] "A defendants failure to follow its
   own procedural rules and regulations  IS AN INDEPENDENT VIOLATION OF
DUE PROCESS".......
33.   Refering to Exhibit #3, Item-7,  there IS NO "REAL" Training
   provided.
34.   For the most part, safety training is non-existent in regards
   to matters and issues related to the shoe factory.  see Exhibit#4
Ite-5.   Actual Procedure is  for shift supervisor(S) to pass around
documents  related to some issues 'like stringing Christmas lights'
handling hot water, and improper driving issues, then have the inmates
sign-off on this non-relevant suff as-if they have been trained  on
issues relevant to their work environment (?)   Seldom does anything
on these alleged safety training sheets partain to actual shoe factory
safety issues.....and......regardless of this fact, there is never an
actual safety training 'meeting'...video....discussion afterwards...
or otherwise.......JUST SIGN THE DOTTED LINE and GO BACK TO WORK...(?)


35.   Please refer to Exhibit #5.  which demonstrates a typical res-
   -ponse from prison officials.   Step-1 grievance respponse is most
disparaging because Mr. Boland is the assist. plant manager, thusly
everyone is  'on his crew'.   Not knowing whether his supervisors are
performing there jobs correctly and responsibly is cause for alarm.
Connecting the dots will conclude that Mr Boland is unaware of these

traing deficiencies then Mr. Williams is also unaware....(or, at
a minimum, they both are alleging to be unaware).

36.   Exhibit #6 (sleep deprivation grievance) demonstrates a typical
   response reflex by prison officials ;  'denial of all responsibility'.

37.   RUIZ @ Section VII- other conditions of confinement #3-work
   safety and Hygene, para. 2-3 are very clear that it is an 8th
amendment violation to work under conditions which are dangerous and
unsafe as well as it clearly outlines serioua accidents along with
unsafe and improperly used equipment due to improperly trained inmates .
As well, it sheds light on the TDCJ's propencity for duplicity, as
they openly state in writing on the backs of their caps..."TAKING
CARE OF OUR OWN".

              IV. (C) - DELIBERATE INDIFERENCE
                    (14th Amend. Viol.)
38.   Hernandez v. Valesquez, 522 F.3d 556, "A prison official acts
   with deliberate indiference for purposes of an inmates 8th Amend.
claim based on conditions of confinement, only if  he knows that inmates
face substancial risk of serious harm  and disregards that risk  by
failing to take reasonable measures to abate it."

39.   Plaintiff must show both objective and subjective components;
   1)  Objective;  the deprivation was so serious as to deprive inmates
      of minimal civilized measures of lifes necessities [life & Limb];
   2)  Subjective;  official was both aware of facts from which infer-
      -ence could be drawn that substancial risk of serious harm exists.

40.   RUIZ @ [HN 20]- "Isolated incidents of indifference to inmates
   [safety] by guards and administrators.....do not give rise to claims
of constitutional proportion, however, 'a pattern' of such occurences
extending over a period of time or the existence of systematic def-
-iciencies which will inevitably lead to unnecessary pain, [injury]
and distress, constitute proof of deliberate indifference."

41.   In this matter, both the Objective and Subjective components,
   in conjunction with [HN 20], compliment and ultimately define
deliberate indifference.  W.P. Clements shoe factory superintendent,

10.

Williams, has been under the employ of the TDCJ/TCI for 18+ yrs.,
most of which, if not all, were at the shoe factory.  He (Williams)
has witnessed or been made aware of most, if not all, of the injur-
-ous accidents caused by these "DESMA" soling machines.  Due to this
fact and that, without change, injurous accidents are immenent and
that Mr. Williams has turned a blind eye, with the assistance of others,
proves without question....deliberate indifference,for prisoners
safety at the W.P. Clements shoe fcatory. (Plaintiff included).

42.   Once an accident occurs at the shoe factory the information is
    forwarded to risk management at W.P. Clements unit, an alleged
investigation ensues, and thusly, a report is generated and forwarded
'up-the-chain' which includes the Sr. Warden, Mr. Hazelwood, and Mr.
THayler.  Based on information and belief, the information is also
forwarded to the TDSHS  and  the ACA....

43.   See Exhibit #7, after a return letter from OSHA which refered
    the plaintiff to TDCJ Risk Management, Ms. Boerline, plaintiff,
submitted a letter to her outlining the issue of unsafe machinery,
which was met with 'silence'..(?)  (See Exhibit #8)

44.   In regards to inspections and/or investigations made by the
    W.P. Clements unit Risk Management staff, see Exhibit #2, para. 4,
items 3,4, and 5;  'risk managements failure to see that the volume
of accidents in themselves constitutes concern, and the refusal to
condemn the equipment [or] force their retrofit defines their own
deliberate indifference and renders them (Risk Management personel)
liable.

45.   Upon information and belief, OSHA, effective 1970, is unable
    to intervene in matters such as this because the State of Texas
developed[its own]"Policing Agency"...TDSHA....   This organization
is designed primarily to  replace  O.S.H.A. regarding work-place
safety within TDCJ-ID.

46.   This being the case, surely the TDSHA has been advised of all
    the injuries plaguing the W.P. Clements unit shoe fcatory, and,
if so,  why  haven't they intervened to protect inmates from this
obviously seriously dangerous work invironment partaining to the
"DESMA" soling machines..?   And/or, [if] they have NOT been advised

11.

WHY NOT..?

47.   Upon information and belief, these injuries are not only reported
   to the TOSHA but also reported to the A.C.A. officials.;  however,
these very officials continue to 'certify' the "DESMA" soling machines
as 'safe'.   ▢If ACA officials are indeed aware of the injuries on
the "DESMA" soling machines, regardless, regardless of the excuses
given by the TDCJ officials as to why the accidents occurred, how can
the machines be deemed 'as safe ?'


48.   RUIZ @ [HN 18]- "while isolated incidents of negligence may
   not consitute sufficient basis for 42 U.S.C.'A. §1983 jurisdiction,
'patterns' of negligence may.


49.   Plaintiff has demonstrated deliberate indifference [b]y showing
   'a pattern' of incidents , namely the volume of incidents/injuries
(of which, upon request/order of evid. hearing may be produced for
this hon. cts review), the fact that all the officials named within
this complaint were aware of the numbers of injuries and over the
decades have failed to abate them, and by exposing 'patterns' [i]n
sleep deprivation , TDCJ officials regarding their own policies and
procedures  Re; operation and training procedures .....this and these
show that all of the officials  named herein should not be allowed
any immunity.


                    V.   SYNOPSIS AND QUESTIONS OF LAW
50.   There is no question that inmates are forced to work for TDCJ;
   however, inmates at the W.P. Clements unit shoe factory are forced
to work under conditions that have been responsible for numerous
injuries  over the past 20+ yrs.  without intervention from the court,
there is nothing to stop the future/further injuries  which includes
the loss of limbs, by these "DESMA" soling machines.


51.   No reasonable mind can conclude that the sole responsibility
   of all of thse accidents[on one specific machine] (THE "DESMA")
can rest upon the inmate operator given all the addressed exacerbating
factors ....not to exclude the existence of the NEW MAINgroup soling
machine , which has  NO ACCIDENTS attached to it, proving that safe
equipment/machinery exists that will accomplish the mission to man-

-ufacture  shoes with the safety mechanism's available to prevent
such past injuries, pain and suffering of inmates. (including plaintiff).

52.    This matter breeds numerous questions that plaintiff believes
       a jury shoulddeliberate;
       A).  Is 3½-4 hrs of uninterupted sleep adequate to operate
            dangerous, heavy, industrial equipment with a clear mind..?
       B).  Does the continuing waking-up of inmates, especially when
            completely unecessary , constitute "sleep deprivation¶" ?
       C).  Would 'sleep deprivation' be considered[a contributing
            factor] to any accident involving human error..?
       D).  Is improper or inadequate 'training'[a contributing factor]
            to any accident involving human error..?
       E).  Could the officials named herein actually believe that,
            given the preponderance of evidence within their sight and
            the sheer volume of injuries, their conduct or inaction(S)
            are lawful..?
       F).  Is it plausable for the officials named to deny liability
            based upon truly believing he/she is not at fault..?
       G).  Is it plausable for the A.C.A. officials , given their
            knowledge of these accidents and injuries, to 'certify'
            to their customers,(i.e. insurance and bonding agencies)
            that the W.P. Clements unit is 'safe'..?
       H).  [I]f the A.C.A. is unaware of these injuries, is it due
            to poor communication between the TDCJ officials, poor in-
            -vestigation practices by the A,C.A., or, is it Fraudulent
            actions by either or both parties..?
       I).  [I]f the TDSHS is aware of these injurous accidents , are
            they within their legal parameters TO DO NOTHING to circumvent
            these injuries..?
       J).  [I]f the TDSHS is unaware of these injuries , is it due
            to the TDCJ officials not communicating these injuries, and,
            does this not constitute A CONFLICT OF INTEREST..?
       K).  Is the repetitious excuse of 'operator negligence' adequate
            for the named defendant(S)'to bury their heads in the sand'
            and by doing so, does this not define liability and deliberate
            indifference..?

L).   Should the TDCJ, A.C.A., and TDSHS, be held liable when
it     its very own inadequacies, practices and policies are the
       greater contributing factors and/or circumstances to those
       named accidents/injuries within the W.P. Clements unit shoe
       factory,.?

M).   Due to information and belief plaintiff is aware of the
       magnificent cost to replace a "DESMA" soling machine (aprox.
       $375,000.oo each for a total of $1,500,000.oo.....(could this
       be WHY the 60+ yr. old "DESMA" soling machine(S) (x4) are
       allowed to continue to work..?


5  N).   In Plaintiffs opinion, "it is reasonable to conclude" that
       if a piece of equipment/machinery,in a private sector,caused
       as many injuries as have the "DESMAS", O.S.H.A. would have
       condemn'd the machinery long ago and fined the owner(S) of
       the company who were continuing to operate such dangerously
       unsafe equipment.   It is therefore, REASONABLE TO BELIEVE
       that the TDSHS should/would do likewise..


53.   To date, the judicial system has turned a 'blind-eye' to these
       types of abuses and gross deliberate indifferences for so long ,
       in so many cases, that the chain-of-authority has become mentally
       immunized to any threat of liability or accountability for their
       actions....or in this matter, [i]nactions.   Any relief is unattain-
       -able without the courts intervention and injunction as plaintiff
       has requested......


                VI,   EXHAUSTION OF LEGAL REMEDIES...
54.   Plaintiff used the prisoner grievance process available at the
       W.P. Clements unit in an attempt to resolve the problem.   On
       April 21, 2011, plaintiff presented the facts related to this com-
       -plaint .   On April 25th, 2011, plaintiff was sent a response
       stating that his grievance time limits had expired.   (see Exhibit
       #9,)

55.   On April 29th, 2011, plaintiff submitted a step-2 grievance.
       On May 20th, 2011, plaintiff was sent a response stating his in-
       -ability to file the step-2 because his step-1 was never processed
       due to his un-timeliness.(see Exhibit #9, pg's 2-3)

                              14.

56.    On June 8th, 2011, plaintiff's step-1 griev. was 're-activated'
       as per Huntsville Directive..!due to the nature of the claim!
       The response plaintiff received stated that according to Risk
       Management, "there were and are guards still up/in place from the
       manufacturer of the machine."
       This is an out-right prevarication, further resonse encumbered
       the plaintiff with blame. (see Exhibit #9, pg.-1 griev. res.)

57.    On June 9th, 2011, plaintiff responded to TDCJ,(see Exhibit #9.
       pg.-4 ).  On July 13th, 2011, TDCJ responded  'denying any respon-
       -sibility as well as denying any relief or further action.(see;
       Exhibit #9, pg.-4 griev.res.)


                        VII.  SPECIAL NOTES
58.    Plaintiff has only one copy of his Exhibits with no means
       by which to make copies.  Plaintiff is asking this hon. ct. to
       Order W.P. Clements unit law library to make the necessary copies
       to satisfy the court and one extra for return-stamped-filed for
       the plaintiff.....the cost to be charged to the plaintiffs Trust
       Fund Account. (20% of all deposits to plaintiffs account to go
       towards such a fee).

59.    Plaintiff has spoken with numerous inmates that have been
       injured by the "DESMA" soling machines;  however, those currently
       employed in the W.P. Clements shoe factory, out of fear of retal-
       -iation/retribution, fear to come forward with needed testimony.
       That being addressed, plaintiff believes that all of those injured
       inmates not under the shoe factory's employ, would  step forward
       and plaintiff also believes that due to the number of injured
       inmates,  A Class Action complaint may be viable as per T.R.C.P. 42..

60.    Plaintiff is asking the court to review the merits of this
    c  claim and make a determination as to whether A Class Action law
       suit would better serve  the group/court in this litigation, and
       file it as such at that time.


                              15.

## VIII.   LEGAL CLAIMS

61.   Plaintiff Re-alleges and incorporates by reference paragraph(S)
      1-49........

62.   The 8th amend. violations of 'sleep deprivations' and'being
      forced to work in an unsafe work environment' exacerbated by in-
      -adequate and non-existent operation and safety training, along
      with the 14th amend. violation of 'deliberate indifference' viol-
      -ated plaintiffs rights and constitutes cruel and unusual punish-
      -ment under both the 8th and 14th amendments to the U.S. Const..

## IX.   PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully prays that this Hon. Court Enter
Judgement Granting Plaintiff;

63.   A declaration of/that acts and omissions described herein
      violated Plaintiffs rights under the Constitution and laws of
      the United States-8 & 14th amend(S);

64.   A preliminary and permanent INJUNCTION Ordering the W.P.
      Clements sboe factory by way of its agents, to cease and desist
      the operation of its 4-Four "DESMA" soling machine(S), so-as
      to prevent further injuries to inmate operators and for the W.p.
      Clements unit and all TDCJ officials to cease and desist all
      'sleep deprivation' practices and policies.;

65.   Order W.P. Clements unit officials as well as all TDCJ officials
      and/or their agents  provide  'true'  and adequate operations and
      safety training for those inmates operating industrial machinery/
      equipment which causes grievious injuries.   Plaintiff asks;

66.   This Court Order that all 'training' be conducted by a 'certified'
      trainer  as opposed to  another inmate who has been trained
b     by another inmate (un-certified).

67.   Compensatory Damages  in the amount of $10,000.oo against
      each defendant, jointly and severally;

68.   Punitive Damages  in the amount of $100,000.oo against each
      defendant;

69.   A JURY TRIAL on all issues triable by jury;

70.   That defendant(S) pay all cost(S) in this suit;

71.   Any additional relief this Hon. Court deems JUST, PROPER and
      EQUITABLE;

72.   Plaintiff requests that any monetary damages awarded to plaintiff
      be placed in his inmate trust fund account within 30-days of Judge-
      -ment  and be subject to a prompt payment clause which subjects
      that award to an interest rate of prime interest rate plus 1%
      compounded monthly, excluding the first 30-days, should the State
      default, as well, pending any Appeals, that interest is to acrue.

SO PRAYED THIS 15th DAY OF ___May____ 2012.

                              Respectfully submitted,

                              STEVEN MICHAEL BACKSTROM

                              TDCJ-ID# 1657938

                              W.P. Clements unit(TDCJ-ID)

                              9601  spur 591

                              Amarillo, Tx. 79107-9606


                        VARIFICATION

I, STEVEN MICHAEL BACKSTROM, Plaintiff pro-se herein, have read the
complaint and hereby varify that the matters alleged herein are true,
except on matters as alleged on information and belief, and, as to
those...I believe them to be be ture.  I do certify under penalty
of perjury that the foregoing is true and correct to the best of my
knowledge.

      Excuted on this 15th day of ___May____ 2012.

                              /s/, 

                              STEVEN MICHAEL BACKSTROM

                              TDCJ-ID# 1657938

                              W.P. Clements unit(TDCJ-ID)


                              17.

Steven Backstrom 1657938
Clements Unit 4F-08
9601 Spur 591
Amarillo, Tx 79107



J-RAY



PRIORITY ®
MAIL

UNITED STATES POSTAL SERVICE

Visit us at usps.com

Label 107R, January 2008

RECEIVED

MAY 17 2012

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

9502 5103 8518 2137 5331 82

USPS TRACKING NUMBER

U.S. District Court
205 East 5th St.
Amarillo, Tx 79101



UNITED STATES
POSTAL SERVICE

1006

79101

U.S.
POSTAGE
PAID
PM

$
00